UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| v. | : | **25-cr-253 (DLF)** |
| **VICTOR RENATO BLYTHE** | : | |

### DEFENDANT'S MOTION TO SUPPRESS TANGIBLE EVIDENCE

Victor Blythe, through counsel, respectfully moves the Court to suppress evidence discovered as a result of the search of a cell phone seized from his residence because the evidence was obtained in violation of the Fourth and Fifth Amendments of the United States Constitution.

## STATEMENT OF FACTS

On August 12, 2025, at approximately 6:03 a.m., law enforcement executed a search warrant at Mr. Blythe's residence. *See* Exhibit A, Search Warrant. The warrant authorized the search of electronic devices found in the residence and also authorized the "the compelled display of any physical biometric characteristics (such as fingerprint/thumbprint, facial characteristics, or iris display) necessary to unlock any Device(s) requiring such biometric access subject to seizure pursuant to this warrant for which law enforcement has reasonable suspicion that the aforementioned person(s)' physical biometric characteristics will unlock the Device(s)" *Id*. at 9. At the same time, the warrant imposed certain limitations on the actions of law enforcement:

> While attempting to unlock the device by use of the compelled display of biometric characteristics pursuant to this warrant, *law enforcement is not authorized to demand that the aforementioned person state or otherwise provide the password or identify the specific biometric characteristics* (including the unique finger(s) or other physical features), that may be used to unlock or access the Device(s). *Nor does the warrant authorize law enforcement to use the fact that the warrant allows law enforcement to obtain the display of any biometric characteristics to compel the aforementioned person to state or otherwise provide that information.* However, the voluntary disclosure of such information by the aforementioned person is permitted. Specifically, agents in executing the warrant [sic] ask any of the aforementioned person for the password to any Device(s), or to identify which biometric characteristic (including the unique finger or other physical features) unlocks any Device(s), *the agents will not state or otherwise imply that the warrant requires the person to provide such information, and will make clear that providing any such information is voluntary and that the person is free to refuse the request.*

*Id*. at 9-10 (emphasis added).

During the execution of the search warrant, Mr. Blythe was awakened and handcuffed without the opportunity to put on any clothing. After officers cleared the house, Mr. Blythe was allowed to put underwear and pants on and was seated, with at least 25 agents in the residence and multiple agents immediately surrounding him. Agents showed Mr. Blythe the portion of the

warrant affidavit that purported to authorize law enforcement to obtain his biometrics to open digital devices.

Agents attempted to open a recovered phone by placing it in front of Mr. Blythe's face. Mr. Blythe turned his head away in "an effort to prevent the phone from being opened." *See* Exhibit B, FBI ROI by Tonya Sturgill Griffith and Special Agent Blake E. Frohnapfel. After Mr. Blythe refused to provide his biometrics, agents placed the phone in front of his face a second time, at which point agents claim that Mr. Blythe provided the password "without being asked or prompted." *Id*. Mr. Blythe disputes that assertion. Ultimately, and regardless of the factual dispute, Mr. Blythe was coerced to open his phone. And at no point did the agents advise him that provision of his biometrics or passwords was voluntary and that he was free to refuse.

Based on the images and messages found on the seized device, Mr. Blythe was arrested and charged with violations of 18 U.S.C. § 2252 (a)(2), and (a)(4)(B). He has been detained since his arrest at the D.C. Jail where he was brutally attacked and placed in protective custody.[1]

## LEGAL AUTHORITY

Under the Fifth Amendment, no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The Fifth Amendment protects communication that is "testimonial, incriminating, and compelled." *Hiibel v. Sixth Jud. Dist. Ct. of Nevada, Humboldt County*, 542 U.S. 177, 189 (2004). Moreover, government use of a self-incriminating statement made involuntarily violates due process. *Mincey v. Arizona*, 437 U.S. 385 (1978). A violation of the Fifth Amendment requires suppression of any evidence obtained from the compelled communication. *See Kastigar v. United States* 406 U.S. 441, 445 (1972). The good faith exception to exclusion of evidence obtained unconstitutionally does not apply to actions

---

[1] Mr. Blythe has since been moved to the Correctional Treatment Facility.

that the warrant does not address or which exceed limits set by the warrant. *See United States v. Leon*, 468 U.S. 897, 920 (1984).

## SUMMARY OF ARGUMENT

The warrant and its execution were unlawful and any evidence obtained from the unlawful search and compelled admissions should be suppressed. First, the warrant on its face is unconstitutional to the extent it unlawfully compels the display of biometrics in violation of the Fourth and Fifth Amendments. Second, execution of the search warrant exceeded the limitations imposed by the issuing court and ignored the explicit instructions included in the warrant. Because the explicit limitations of the warrant were exceeded, no good faith exception applies.

## ARGUMENT

**I.    To the extent the warrant authorized the "compelled display" of biometrics to open Mr. Blythe's phone, it was unconstitutional on its face.**

To the extent the search warrant here authorized the "compelled display" of Mr. Blythe's biometrics, it was facially unconstitutional and violated Mr. Blythe's Fifth Amendment right against self-incrimination. The use of facial recognition or fingerprints to open an electronic device is "testimonial," and the compulsion of such actions is a violation of the Fifth Amendment. *United States v. Brown*, 125 F. 4th 1186, 1204 (D.C. Cir. 2025).

In *Brown*, the Circuit was clear that commands to unlock a phone via the use of a thumbprint was a "compelled opening" that violates the Fifth Amendment. *Id*. at 1201-02. The warrant authorizing the search of Mr. Blythe's residence specifically authorized the "compelled display of any physical biometric characteristics…necessary to unlock any Device(s)." *See* Exhibit A at 9.[2] The warrant authorized this compulsion in numerous ways, including by

---

[2] As discussed below, the warrant also placed limitations on how law enforcement could obtain biometric password information. Law enforcement were required to comply with all of the

4

"pressing any fingers on the phone or holding the phone in front of Mr. Blythe's face." *Id*. Under *Brown*, this was a direct violation of Mr. Blythe's Fifth Amendment right against self-incrimination because even though [placing a phone up to someone's face without consent] is the use of a "physical trait," it is testimonial because it is a "manifestation[] of testimonial thoughts in the defendant's mind." *Brown*, 125 F. 4th at 1202.

      Mr. Blythe's compelled facial recognition here was testimonial because it disclosed his knowledge of and relationship to the seized cell phone here as demonstrated by his nonverbal communication of turning his face away when agents placed the phone parallel to his head. By placing the phone to Mr. Blythe's face, agents forced Mr. Blythe into the communicative act of either admitting possession of the phone and knowledge of its contents by using his face to open it or showing a consciousness of guilt as to its possession and contents by turning his face away to refuse opening it. Both acts, opening the phone or refusing to open it, were testimonial in nature and potentially incriminating. To the extent the warrant authorized police to compel one action or the other by seizing the phone, restraining Mr. Blythe, and compelling the use of his biometrics to unlock it, the warrant was facially unconstitutional under due process principles and prohibitions against compelled self-incrimination of the Fifth Amendment and no reasonable officer should have relied upon it. *United States v. Leon*, 468 U.S. 897, 923 n.23 (1984) ("[G]ood-faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization.").

---

warrant's requirements. To the extent those requirements were unclear or in internal conflict, law enforcement was not permitted to disregard the requirements limiting their authority to search or compel communication from Mr. Blythe.

5

The warrant was additionally unconstitutional to the extent it compelled Mr. Blythe to provide biometric password information based on law enforcement's determination that there was "reasonable suspicion that [Mr. Blythe's] physical biometric characteristics [would] unlock the device" Attachment A, Search Warrant at 9. There is simply no authority for the government to compel a person to provide biometric passwords for a device based on reasonable suspicion that the person possesses those passwords – and there is doubly no authority for a court to delegate to law enforcement the determination of whether such reasonable suspicion exists. In this regard, the warrant in this case is without precedent.

As in *Brown*, the evidence and fruits obtained as a result of police coercing Mr. Blythe to unlock his phone in violation of the Fifth Amendment must be suppressed. *Brown,* 125 F.4th at 1204 (citing *See Kastigar*, 406 U.S. at 445; *Harrison v. United States*, 392 U.S. 219, 222, (1968) ("[T]he same principle that prohibits the use of confessions [wrongfully obtained] also prohibits the use of any testimony impelled thereby—the fruit of the poisonous tree, to invoke a time-worn metaphor.")).

II. **Even if the officers relied upon a lawfully-issued warrant, they did not lawfully execute it.**

Even if the warrant could have validly compelled Mr. Blythe to unlock the phone – which it could not have under the Constitution – suppression is required because officers did not execute the warrant as it explicitly required them to. The warrant explicitly directed law enforcement not to "state or otherwise imply that the warrant requires the person to provide such [biometric or password] information" and affirmatively required that law enforcement "will make clear that providing any such [biometric or password] information is voluntary and that the person is free to refuse the request." Exhibit A, Search Warrant at 9. Law enforcement did not comply with either of these directives.

6

The actions of law enforcement forced Mr. Blythe to communicate incriminating information. Police roused Mr. Blythe from bed in the early morning hours, left him to stand naked in the presence of over two dozen law enforcement officers, placed him in handcuffs, seated him in the middle of multiple officers barely clothed, and showed him parts of a warrant that purportedly "authorized" law enforcement to obtain "compelled display of physical biometric characteristics (such as fingerprint/thumbprint, facial characteristics, or iris display)." Exhibit B, ROI at 1, Exhibit A, Search Warrant at 9. When agents put the phone in front of Mr. Blythe's face and he pulled away, his actions made it clear that he did not consent to the use of biometrics to unlock the phone. Despite Mr. Blythe's first refusal to *voluntarily* unlock the phone using his face, agents placed the phone in front of Mr. Blythe a second time. *See* Exhibit B, FBI ROI at 1. The agents claim that when they did so, "without being asked or prompted," Mr. Blythe manually entered his passcode. *Id*. Mr. Blythe disputes that he was not "asked or prompted" by the officers.[3]

Even if, however, there was no verbal demand by law enforcement, Mr. Blythe was non-verbally coerced into unlocking the phone. He was surrounded by multiple law enforcement officers, had been shown a judicial warrant that purported to compel his compliance, and officers had already exerted authority to compel his use of biometrics once by placing the phone to his face while he was restrained and they were attempting to do so again. These circumstances did not allow for Mr. Blythe to voluntarily consent to unlock the phone. *See, e.g.*, *United States v. Glover*, 144 F.4th 336, 342 (D.C. Cir. 2025) (finding that police officer's reference to warrants was a claim of lawful authority to carry out the search, which necessarily tainted understanding

---

[3] Notably, despite law enforcement recording the execution of the search warrant of the residence, the crucial moments where they required Mr. Blythe to unlock his phone are missing from the recordings.

7

of whether consent for search could be refused (citing *Bumper v. North Carolina*, 391 U.S. 543 (1968)).

Based on the totality of circumstances and the apparent futility of resisting, Mr. Blythe gave up and entered the passcode to unlock the phone. This admission was not voluntary and violated the Fifth Amendment. *See also Blackburn v. State of Ala.*, 361 U.S. 199, 207 (1960) (recognizing that "coercion can be mental as well as physical, and that the blood of the accused is not the only hallmark of an unconstitutional inquisition" (citing *Chambers v. State of Fla.*, 309 U.S. 227, 236 (1940)).

Even if Mr. Blythe entered the passcode without being verbally "asked or prompted" – which he did not – suppression is nevertheless required because law enforcement did not abide by the warrant's express requirements. The agents efforts to force Mr. Blythe to unlock the phone plainly violated the warrant's command that "law enforcement is not authorized to demand that the aforementioned person state or otherwise provide the password or identify the specific biometric characteristics (including unique finger(s) or other physical features) that may be used to unlock or access the Device(s)." Also, the warrant stated that it did not "authorize law enforcement to use the fact that the warrant allows law enforcement to obtain the display of any biometric characteristics to compel the aforementioned person to state *or otherwise provide* that information." *Id.* at 9-10 (emphasis). Additionally, the warrant explicitly directed: "The agents *will not state or otherwise imply* that the warrant requires the person to provide such information ..." *Id.* at 10 (emphasis added). Law enforcement did not follow any of these directives, and in fact, violated them. By repeatedly placing the phone to Mr. Blythe's face, agents communicated a demand that he unlock it. Mr. Blythe understood that demand as he eventually unlocked the

phone, "saying it was easier to do that way" than through the agents continuing to force the use of his biometrics. Exhibit B, ROI.

The warrant also required law enforcement to "*make clear that providing any such [biometric password] information is voluntary and that the person is free to refuse the request.*" *Id.* at 10 (emphasis added). Law enforcement did not abide by these requirements either. They did not make clear to Mr. Blythe that providing password information had to be voluntary and they did not explain to him that he was free to refuse their request. To the contrary, Mr. Blythe was seized and law enforcement attempted to use his physical body to unlock his phone in violation of the Fourth Amendment and eventually coerced him to unlock the phone in violation of the Fifth Amendment. Through a show of authority that contravened the express limitations on their authority articulated in the warrant, law enforcement made clear that Mr. Blythe had no choice but to unlock the phone.

"The good faith exception does not apply when officers fail to comply with express limitations in the warrant." *Brown*, 125 F.4th 1206-07 (citing *United States v. Leon*, 468 U.S. 897, 920 (1984) (The good faith exception is appropriate "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and *acted within its scope*[.]") (emphasis added)). For these reasons, the evidence recovered from the seized phone must be suppressed. *Brown*, 125 F.4th 1186, 1207 (D.C. Cir. 2025); *see also People v. Manganiello*, 2025 WL 1777621, *4 (N.Y. App. Div. June 27, 2025) (relying on *Brown* to hold that where agents executed warrant in manner that coerced defendant to answer questions about ownership and control over the phone, including how it could be opened and by whom, Fifth Amendment required suppression of phone's contents)

## CONCLUSION

For these reasons and any others that may become apparent to the Court, the evidence obtained from the phone police seized and compelled to Mr. Blythe to unlock must be suppressed.

                                                Respectfully submitted,

                                                A. J. KRAMER
                                                FEDERAL PUBLIC DEFENDER

                                                        /s/

                                                _____
                                                Maria N. Jacob
                                                Assistant Federal Public Defender
                                                625 Indiana Avenue, N.W., Suite 550
                                                Washington, D.C.  20004
                                                (202) 208-7500