UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>VICTOR RENATO BLYTHE,<br><br>Defendant. | Case No. 25-cr-253 (DLF) |

**GOVERNMENT'S OPPOSITION TO THE
DEFENDANT'S MOTION TO MODIFY RELEASE CONDITIONS**

The United States of America, by and through its undersigned counsel, respectfully opposes the defendant's motion to modify his release conditions. For purposes of this opposition, the government incorporates the factual background in its prior pleadings.

**PROCEDURAL HISTORY**

Mr. Blythe was arrested on August 12, 2025 and charged by complaint with Distribution of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2), and Possession of Child Pornography, in violation of 18 U.S.C. § 2252(a)(4). The government sought pretrial detention of the defendant pursuant to 18 U.S.C. §§ 3142(e)(3)(E) (rebuttable presumption in favor of detention), and 3142(f)(1)(A) (crime of violence) because there is no condition or combination of conditions of release that will reasonably assure the safety of any person or the community. The defendant filed a Motion for Release, and the government filed a Memorandum in Support of Pretrial Detention, both on August 25, 2025. On August 26, 2025, a detention hearing was held. The Honorable G. Michael Harvey concluded that the defendant had not rebutted the presumption that the defendant should be detained pending trial. On September 4, 2025, the defendant filed a Motion to Review Order of Detention. On September 8, 2025, the government filed its Opposition. On September 10, 2025, this Court affirmed the magistrate's order, finding that the defendant had not rebutted the

presumption of detention, and even if he had, detention was warranted based on the facts of the case. In so ruling, the Court noted that the defendant was a danger to children and highlighted the unique dangers posed by crimes of a digital nature. The Court noted that it was not realistic or feasible to monitor the defendant at all times or to provide monitoring necessary to prevent access to internet-capable devices. The Court pointed out that the defendant lived with his brother for years while he engaged in the criminal conduct at issue here and noted the defendant was successful at hiding his criminal activity from his family members. The Court also found that GPS monitoring alone would not be sufficient, given the nature of the offenses.

On November 24, 2025, the defendant filed a Motion for Release from Custody based upon the defendant's medical condition resulting from a physical assault at the jail that ended up requiring the defendant to have brain surgery. The defendant argued that the jail was not adequately meeting his medical needs. After a hearing on November 25, 2025, the Court ordered the parties to brief the issue of release pursuant to 18 U.S.C. § 3142(i), which allows the Court to "permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason."

On November 26, 2025, the Court denied the defendant's Motion for Release without prejudice but ordered that the "defendant shall be temporary released for a limited period so that his medical needs can be adequately addressed." ECF 26. The Court's conditions of release included 24-hour home incarceration, GPS monitoring, no access to internet-capable electronic devices, and that "[o]ne thirty party custodian must always be present with the defendant in the home and at his appointments."

At the order of the Court, on December 16, 2025, the defendant filed a Joint Status Report indicating that his incision staples were removed on December 5, 2025, and that his next medical appointment was March 6, 2026.

On December 26, 2025, the government received an e-mail from someone living near the defendant's original home address that stated they observed the defendant at the address on December 23, 2025. On December 27, 2025, the government e-mailed Pretrial and counsel for Mr. Blythe to alert them of this e-mail and inquire whether Pretrial approved the visit to the home on Sycamore Street NW. On December 29, 2025, Pretrial advised that Mr. Blythe had permission to go to an attorney meeting on December 23rd, but he did not have permission to go to the previous residence. Pretrial confirmed via Mr. Blythe's GPS monitor that he was at the Sycamore Street residence on December 23rd. On January 7, 2026, Pretrial filed a violation report. On that same day, the Court admonished the defendant to comply with all conditions of release and to file a response explaining his actions. On January 9, 2026, the defendant filed a response stating that he went to the residence to pick up clothing and "is now completely clear on what his obligations are." ECF 50 at 1.

On February 23, 2026, the defendant filed a motion to modify his release conditions. In his motion, the defendant stated that due to work requirements of his third-party custodian, he would be left unattended two to three times per week from 8:30AM to 3:30PM.

The government opposes this request.

## ARGUMENT

As an initial matter, the Government notes that this Court released the defendant on a *temporary* basis under 18 U.S.C. § 3142(i). This Court did not make a determination under § 3142 that the defendant had rebutted his presumption of dangerousness or that conditions of release could assure community safety. In fact, the Court denied a motion on such grounds. Thus, when determining what conditions are appropriate under § 3142(i), the Court must keep in mind the factors

3

under 18 U.S.C. § 3142(g) that both the magistrate judge and this Court found weighed in favor of his detention.

The defendant seeks to modify his conditions to allow him to be completely unsupervised for two to three days a week. Without a third-party custodian supervising the defendant, many of the Court's conditions are toothless. There will be no one to monitor whether he leaves the house. There will be no one to monitor whether he attempts to access electronic devices.

The defendant will likely argue that his physical movements are constrained by his GPS monitor. While the GPS monitor can tell us where the defendant has been, it is not a certain mechanism to alert Pretrial in real-time that the defendant is violating his release conditions. This is evident with the defendant's prior violation. Although Pretrial was able to confirm the defendant's violation, this violation only came to the Court's attention because the government alerted Pretrial—and the government only knew because of a diligent community member. Without that person contacting the government, the Court may never have known that the defendant violated his release conditions.

The defendant's proposed modification leaves him unsupervised for extended periods of time. Given the danger that the defendant continues to pose, this modification poses a significant risk to community safety.

## **CONCLUSION**

For the foregoing reasons, this Court should not modify the defendant's release conditions.

        Respectfully submitted,

        JEANINE FERRIS PIRRO
        UNITED STATES ATTORNEY

Dated: February 27, 2026    By:   */s/ Rachel Bohlen*
        Rachel Bohlen
        D.C. Bar No. 1010981
        Assistant United States Attorney

United States Attorney's Office
for the District of Columbia
601 D Street NW
Washington, DC 20530
(202) 809-3575
rachel.bohlen@usdoj.gov